IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| WILLIAM HOGAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | No. 7:10-cv-107 (HL) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

### ORDER

Before the Court are Defendant's Motion for Summary Judgment (Doc. 13) and Defendant's Amended Motion for Summary Judgment (Doc. 26). For the reasons stated below, the Amended Motion is granted. The grounds on which summary judgment is granted did not require an analysis of the reasoning set forth in Defendant's first Motion for Summary Judgment (Doc. 13), and therefore, the Court deems the first Motion moot.

I.  **Background**

The basic facts of this case are undisputed. On Saturday, March 28, 2009, Plaintiff went to the United States Post Office in Lake Park, Georgia (hereinafter the "Post Office") between 8:00pm and 9:00pm to check his post office box. (Defendant's Statement of Material Facts ("DSMF") ¶ 5.[1]) The post office boxes were accessible twenty-four hours a day, even though the Post Office service

---

[1] All citations to Defendant's Statement of Material Facts refer to statements that have been admitted by Plaintiff.

counter was only open during standard business operating hours. (DSMF ¶3.) Plaintiff went to the Post Office every day to retrieve his mail, sometimes during regular work hours and sometimes after hours. (DSMF ¶ 2.)

On the day in question, it rained throughout the day and continued to rain as Plaintiff arrived at the Post Office and made his way inside. (DSMF ¶ 6.) As Plaintiff was entering the Post Office, his left foot slipped forward, causing him to fall. (DSMF ¶ 13.) Plaintiff realized after he fell that he slipped because there was water on the ground inside the entryway to the Post Office. (DSMF ¶ 14.) The following Monday, Plaintiff returned to the Post Office and spoke with Mr. Charles Stubbs, a sales and service associate at the Post Office. (Hogan 46, Stubbs 9.) Plaintiff told Mr. Stubbs that he had slipped and fallen in the Post Office and claimed that he sustained injuries to his back, hip, and jaw. (Hogan 46-47.) Plaintiff sought treatment on Tuesday for his alleged injuries. (Hogan 46.) He later returned to the Post Office to report his fall to Ms. Ginger Valenti, the Postmaster. (Hogan 47.)

Plaintiff now files this suit against the United States[2] under the Federal Tort Claims Act, alleging that the Post Office should have been aware of the

---

[2] The Federal Tort Claims Act ("FTCA") governs actions brought against the USPS. However, under 28 U.S.C. § 1679, only the United States has waived its immunity, not its agencies or employees, and therefore the United States is the proper defendant in this action. In the Answer, the parties stipulated to the substitution of the United States as the Defendant. (Doc. 4, p. 1.) The above caption has been amended, and the Clerk is directed to amend the docket caption to comply.

dangerous condition presented by slippery floors, and should have taken precautionary measures to ensure that the Post Office remained safe.

## II. **Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 354-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex

3

Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this framework, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

III. **Analysis**

    a. **FTCA Claims**

As a general rule, the United States enjoys sovereign immunity and cannot be sued. Monzon v. United States, 253 F.3d 567, 570 (11th Cir. 2001). However, in some circumstances, the United States waives its immunity. Id. The Federal Tort Claims Act ("FTCA") is one circumstance when sovereign immunity is waived and private parties are authorized to file actions against the United States for torts committed by people acting on behalf of the United States. The FTCA authorizes suits for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a

> private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Substantive claims under the FTCA are governed by the law of the state where the injury occurred. See Hess v. United States, 361 U.S. 314, 318, 80 S.Ct. 341, 345 (1960). However, before applying state law to the underlying claim, it is the Court's responsibility to determine whether there is an exception that would exempt a defendant from FTCA liability.

    b.    **"Discretionary Function" Exception**

The FTCA contains exceptions that serve to revoke the United States' waiver of sovereign immunity in certain circumstances. One exception is the "discretionary function" exception, which provides that the United States is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Essentially, this exception prevents suits against government employees for those decisions that require the employee to exercise his or her discretion. The discretionary exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private

5

individuals." <u>Autry v. United States</u>, 992 F.2d 1523, 1526 (11th Cir. 1993) (citing <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762 (1984)).

In this case, the question is whether the discretionary function exception to the FTCA applies to the facts at hand. If the exception applies, the United States is exempt from liability under the FTCA. If the exception does not apply, Georgia law should be applied to determine the merits of the underlying personal injury claim.

1. **Conduct at Issue**

The first step in deciding whether the discretionary function exception applies is to determine the conduct at issue. <u>Autery</u>, 992 F.2d at 1527 ("[b]efore we address whether the government's conduct violated a mandatory regulation or policy, we must determine exactly what conduct is at issue").

In <u>Autery</u>, the Eleventh Circuit addressed the question of the conduct at issue in a case that involved a dead tree that fell on an automobile in a national park, killing one of the passengers. <u>Id.</u> at 1524. The plaintiffs, the passenger's estate, sued the United States under the FTCA, but the United States claimed the discretionary function exception shielded it from FTCA liability. <u>Id.</u>

The United States argued that the conduct at issue in that case was "the Park Service's decision to establish and implement a tree inspection program." <u>Id.</u> at 1527. The plaintiffs, on the other hand, contended that the conduct at issue was the "park's failure to carry out the mandates of its then existing policy of

6

identifying and eliminating known hazardous trees." Id. The Autery court did not accept either party's definition of the conduct at issue, finding that the government's formulation was too broad and the plaintiff's formulation was too narrow. Id. Instead, the Autery court determined that the appropriate conduct at issue in the case was "whether controlling statutes, regulations and administrative policies mandated that the Park Service inspect for hazardous trees in a specific manner." Id. at 1528. In the absence of controlling statutes, the Park officials' decision to employ a particular inspection and execution procedure was protected by the discretionary function exception. Id.

In this case, like in Autery, the parties dispute the conduct at issue. Defendant contends that the conduct at issue is the Post Office's decision about the most appropriate safety alternatives to be employed after hours when there are no on-duty employees. Defendant argues that "[i]n simple terms, an agency has discretion in deciding … not to have personnel present after hours, not to adopt other policies which would make its entryway safer." (Doc. 26, p. 7.) In contrast, Plaintiff argues that the conduct at issue is the Post Office's failure to properly warn customers about potentially dangerous conditions and take steps to remedy those conditions.

After review, the Court finds that Plaintiff's argument, like the plaintiffs in Autery, is too narrow. In Autery, the Eleventh Circuit found that defining the conduct at issue as the manner in which park personnel administered the inspection plan was too limiting. Autery, 992 F.2d at 1527. Similarly, to define the

conduct at issue in this case as the manner in which the Post Office handled rainy or wet conditions is taking too narrow of an approach. Instead, the conduct at issue seems to be properly defined by Defendant.

The Court finds Bell v. United States, 238 F.3d 419, 2000 WL 1720932 (6th Cir. Nov. 6, 2000), instructive. The facts of that case are almost exactly the same as the facts in the present case. There, Ms. Bell entered the lobby of a post office in Kentucky on a rainy Saturday afternoon when the service windows were closed. Id. at *1. Upon entering, Ms. Bell slipped and fell, injuring herself. Id. Ms. Bell sued the United States under the FTCA, alleging that the USPS was liable for her injuries for its failure to comply with safety procedures in the Post Office Supervisor's Safety Handbook. Id. The Sixth Circuit determined that the conduct at issue was "the Plainview postmaster's conduct in deciding under what circumstances to allow the lobby area to remain open to the public at times when the service windows were closed." Id. at *4. In this case, like in Bell, the conduct at issue is not the Post Office's safety procedures. Instead, the conduct at issue is the decision to allow the post office boxes to be accessible on a twenty-four-hour basis and the decision to have certain safety measures available during those times when no employees were on duty.[3]

---

[3] The Court declines to address the issue of whether the safety measures that were intended to be employed were actually in use at the time of Plaintiff's fall. That question is more akin to a negligence analysis than the discretionary function analysis, and potential negligence does not have a place in the discretionary function analysis. Autery, 992 F.2d at 1528 (overruling the district court because "[t]he district court's analysis appears to collapse the question of

2. **<u>Berkovitz</u> Analysis**

After identifying the conduct at issue, the Court must determine whether the conduct at issue meets the standard set forth in <u>Berkovitz v. United States,</u> 486 U.S. 531, 536-37, 108 S. Ct. 1954, 1959. In that case, the Supreme Court established a two-prong test to determine whether an employee's conduct falls within the discretionary function exception. <u>Id.</u> The first prong requires that the action involve an element of "judgment or choice." <u>Monzon</u>, 253 F.3d at 570 (citing <u>Berkovitz</u>, 486 U.S. at 536, 108 S. Ct. at 1958). The discretionary function exception will not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because under those circumstances, the employee has no rightful option but to adhere to the directive." <u>Id.</u> (quoting <u>Berkovitz</u>, 486 U.S. at 536, 108 S. Ct. at 1958-59) (internal quotations omitted).

If the conduct is determined to involve judgment or choice, then the second prong requires the court to determine "whether the judgment is of the kind that the discretionary function exception was designed to shield." <u>Berkovitz</u>, 485 U.S. at 537, 108 S. Ct. at 1959. The reason for this second prong is that Congress wished to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." <u>Varig Airlines</u>, 467

---

whether the [defendant] was negligent into the discretionary function inquiry … It is the governing administrative policy, not the [defendant's negligence], however, that determines whether certain conduct is mandatory for purposes of the discretionary function exception.")

U.S. at 814, 104 S. Ct. at 2765 (citing Berkovitz, 486 U.S. at 537, 108 S. Ct. at 1958-59).

In this case, as discussed above, the conduct at issue is the decision to keep the Post Office open on a twenty-four-hour basis and the decision about the safety measures to be employed when there were no postal employees on duty. Plaintiff contends that the Post Office's safety measures are not discretionary and therefore fail to meet the first prong of Berkovitz. Using the Postal Service Maintenance Handbook ("Handbook") for support, Plaintiff argues that the Handbook sets mandatory standards that must be followed by employees. In particular, Plaintiff highlights portions of the Handbook that outline measures to be taken when the floor is wet. Plaintiff argues that the decision about the course of action when there is a wet floor is not discretionary and contains no exception for conditions that arise after normal business hours. Plaintiff argues that the action is dictated by set standards, and therefore, the discretionary function exception should not apply.

Upon reviewing the Handbook, it seems illogical to convey the Handbook in such a strict fashion. The Handbook is an excruciatingly detailed set of guidelines that specifically addresses floors, care and maintenance. Chapter six of the Handbook dictates cleaning methods to be used in post offices, and goes so far as to include a diagram that demonstrates the proper figure-eight motion to be used when mopping. USPS MAINTENANCE HANDBOOK MS-10, p. 6-4, fig. 6-3. If the Court were to apply Plaintiff's rationale to these mopping instructions, the

10

instructions would be construed as indisputable mandates, and it is unreasonable to construe this set of instructions so narrowly. The Handbook should be viewed as a compilation of best practices, not as an iron-clad directive.

The Court finds that there are no mandatory rules dictating the hours of operation of the Post Office or the safety measures that must be employed after hours. The decision is left to the Postmaster and other decision makers, and they must use some element of judgment or choice in reaching a conclusion about their course of action. Thus, the first prong of the Berkovitz analysis is satisfied.

The second prong of the Berkovitz analysis is whether the judgment exercised falls within the scope of the decisions that the discretionary function was designed to protect. 486 U.S. at 536-37. The exception shields governmental actions and decisions that are based on considerations of public policy. Id. at 537. If a policy "leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligence or wrongful." Id. (citing Indian Towing Co v. United States, 350 U.S. 61, 69, 76 S. Ct. 122, 126-27.) Policy considerations can include the need to maximize compliance with agency regulations and the efficient allocation of agency resources. Id. (citing Varig Airlines, 467 U.S. 797, 104 S. Ct. 2755).

In this case, the postmaster's decision to keep the Post Office lobby open on a twenty-four-hour basis without employees on duty to supervise the facility is

a decision based on a policy consideration. Post offices across the United States have different hours of operation, and some post offices do not allow for twenty-four-hour access to post office boxes. There are numerous public policy considerations that would play into the decision to have the Post Office open all hours of the day: risks of having a building open with no supervisors present, availability of resources, and the need of the public to access the building. Therefore, this decision qualifies as one based on policy, and it falls within the scope of those decisions that the discretionary function exception was designed to protect.

IV. **Conclusion**

The conduct at issue in this case is the decision to keep the Post Office open around the clock, and that decision is one that is protected by the discretionary function exception to the FTCA. Therefore, Defendant is shielded by the exception, and is out of reach of FTCA liability. There is no reason to proceed with an analysis of the personal injury claim. The Court grants summary judgment in favor of Defendant.

**SO ORDERED,** this 2nd day of February, 2012.

*s/Hugh Lawson*
HUGH LAWSON, SENIOR JUDGE

ebr